**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSE MANUEL CARRILLO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-cv-00371-O-BP** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jose Manuel Carrillo ("Carrillo") filed this action under 42 U.S.C. § 405(g),

seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner")

of his application for a period of disability and disability insurance benefits ("DIB") under Title II

of the Social Security Act ("SSA"), and Supplemental Security Income ("SSI") payments under

Title XVI. ECF Nos. 1 and 13. After considering the pleadings, briefs, and the administrative

record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor

**REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**I.     STATEMENT OF THE CASE**

Carrillo was born on May 14, 1972, has a limited education, and can communicate in

English. *See* SSA Admin. R. (hereinafter, "Tr.") 25-26, ECF No. 11-1. His employment history

includes work as a building maintenance repairer. Tr. 25. Carrillo asserts that a combination of

impairments renders him disabled and entitled to relief under the SSA. ECF No. 1. Carrillo filed

applications for a period of disability, DIB, and SSI payments on September 6, 2016. Tr. 11. In all

applications, he alleged that his disability began on March 1, 2016. *Id.* The claim was denied

initially and upon reconsideration. *Id.* Carrillo requested a hearing, which was held on April 3, 2018 in Dallas, Texas, with Carrillo, his attorney, and a vocational expert ("VE") present. *Id.* The ALJ issued his decision on July 18, 2018, finding that Carrillo was not disabled. Tr. 27.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Carrillo had not engaged in substantial gainful activity since March 1, 2016, the alleged onset date. Tr. 13. At step two, he determined that Carrillo had severe impairments of obesity, vascular insult to the brain, stage 4 chronic kidney disease, diabetic neuropathy, diabetic retinopathy, and congestive heart failure. Tr. 14. At step three, the ALJ found that Carrillo's impairments did not meet or equal in combination one of the impairments listed in 20 C.F.R. pt. 404(p). Tr. 21.

At step four, the ALJ ruled that Carrillo had the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and less than ten pounds frequently, as well as stand and walk two hours out of an eight-hour workday. Tr. 22. Additionally, he determined that Carrillo's ability to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) is reduced by inability to use the upper extremities on more than a frequent basis for fingering, feeling, and grasping. *Id.* He concluded that Carrillo was unable to perform his past relevant work. Tr. 25. At step five, he found that considering Carrillo's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. Tr. 26.

The Appeals Council ("AC) denied review on March 9, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's

RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

This Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

III.    **ANALYSIS**

Carrillo raises four issues on appeal. He claims that the ALJ (1) failed to properly evaluate medical evidence; (2) improperly substituted his own medical opinion to determine the RFC; (3) failed to consider all of his functional limitations in determining his RFC; and (4) failed to establish the existence of work which he could perform. ECF No. 13 at 6-13.

A.    **The ALJ and the AC did not properly evaluate the medical evidence.**

Carrillo argues that the ALJ and the AC failed to adequately consider relevant medical evidence of record regarding his kidney disease that tends to show that his impairments satisfied the requirements set forth in the Listing. ECF No. 13 at 7-10. Carrillo urges that the new medical evidence showing that he has been placed on dialysis expected to last for three years undermines the foundation for the ALJ and the AC's determinations and that remand is thus required. *Id.* The Commissioner responds that Carrillo failed to present evidence that showed his impairments met the Listing requirements. ECF No. 14 at 3. Specifically, the Commissioner contends that Carrillo's kidney disease does not meet the Listing requirements because the record does not contain a report from Carrillo's doctor describing his chronic kidney disease, current dialysis, and an indication that the dialysis will be ongoing as required by Listings 6.00C1 and 6.03. *Id.* at 4.

1.    **The ALJ did not evaluate evidence that Carrillo's impairments satisfied the requirements set forth in the Listing.**

The ALJ found that Carrillo's impairments did not meet or equal in combination one of the impairments in the Listing because he "has not required dialysis, hemodialysis or kidney transplant." Tr. 21-22. As Carrillo points out, however, the ALJ was advised on May 23, 2018 that Carrillo had been placed on dialysis from May 14, 2018 to May 17, 2018 at Medical City Arlington Hospital. ECF No. 13 at 8; Tr. 1520. Further, the ALJ received information about Carrillo's appointment for dialysis on May 22, 2018 at US Renal Care. Tr. 1525. Additionally, included in

the records are orders for dialysis for the period of May 22, 2018 through May 21, 2021. Tr. 49. The records also indicate that Carrillo was evaluated by a nephrologist on June 14, 2018 while undergoing dialysis. Tr. 48. These medical records show that dialysis for Carrillo's chronic kidney disease had indeed been ordered and that Carrillo was already undergoing the treatment. The ALJ failed to address the severity of this development in determining whether Carrillo's impairments satisfied the Listing requirements. Accordingly, this case should be remanded for further proceedings so that the ALJ can address whether Carrillo meets or equals one of the listed impairments, particularly given the evidence presented to the AC.

### 2.    The AC's subsequent denial presents reversible error.

As noted above, the Commissioner's final decision includes the AC's denial of a request for review. *Higginbotham*, 405 F.3d at 336. The AC will review a case if, among other reasons, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). If the claimant submits "additional evidence that does not relate to the period on or before the date of the [ALJ] hearing decision as required in paragraph (a)(5) of this section, . . . the [AC] will send [the claimant] a notice that explains why it did not accept the additional evidence and advises [the claimant] of [the claimant's] right to file a new application." *Id.* §§ 404.970(c), 416.1470(c).

Carrillo submitted new evidence to the AC consisting of medical records from US Renal Care dated May 23, 2018 through July 5, 2018 and records from Medical City Arlington dated January 1, 2018 through June 18, 2018. Some of these records reflected treatment that Carrillo received before the ALJ's hearing on April 3, 2018. The AC stated in its discussion of this evidence: "We find this evidence does not show a reasonable probability that it would change the

outcome of the decision. We did not exhibit this evidence." Tr. 2. The AC went on to say that Carrillo could submit a new claim. *Id.*

Carrillo contends that remand is required because the AC did not exhibit the additional evidence demonstrating that his dialysis was expected to last for three years. ECF No. 13 at 8-10. Carrillo also argues that the AC erred by failing to properly consider the additional medical records that tend to show that his impairments satisfied the Listing requirements. *Id.* Specifically, he argues in his Reply that the requirements for Listings 6.03 and 6.001C have been satisfied. ECF No. 15 at 3-4. He notes that he has been diagnosed with chronic kidney disease on numerous occasions. *Id.* at 4. Further, he argues that records show he was placed on dialysis and that he began such treatment on May 22, 2018. *Id.* Additionally, he claims that the new evidence includes a statement from Drew Heiple, M.D. of US Renal Care that indicates that dialysis was to start on May 22, 2018 and end on May 22, 2021. *Id.* Carrillo argues that the record therefore established that his condition met all of the requirements set forth in Listing 6.03, which requires chronic kidney disease with chronic hemodialysis or peritoneal dialysis along with a report from an acceptable medical source that describes the individual's chronic kidney disease and his current dialysis. Further, he also asserts that Dr. Heiple's statement satisfies Listing 6.00C1, which requires that dialysis has lasted or must be expected to last for a continuous period of at least twelve months.

The AC did not address how this additional evidence impacts the ALJ's findings that Carrillo did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Listing. Taken as a whole, the additional evidence undermines the ALJ's ultimate disability determination, and the Court cannot agree with the AC that this additional evidence likely would not change the ALJ's decision. Accordingly, this case should be remanded for proper consideration of the additional evidence. *See Stewart v. Astrue*,

No. 7:07–cv–052–BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept.18, 2008) (remand required where summary denial of request for review provided no indication that AC evaluated additional evidence).

**B.    The ALJ improperly relied on his own interpretation of the medical and other evidence to determine Carrillo's RFC.**

Carrillo argues that the ALJ improperly substituted his own medical judgment to determine his RFC when there was no medical opinion in the record that suggested that he can use his upper extremities on a frequent basis for fingering, feeling, and grasping. ECF No. 13 at 10. The Commissioner responds that the RFC capacity assessment is a finding of fact that cannot be restricted to merely selecting and endorsing an existing medical opinion, and that the ALJ's decision was supported by substantial evidence in the record. ECF No. 14 at 4-6.

In *Ripley v. Chater*, the claimant argued "that the ALJ failed to develop the record fully and fairly when he concluded that [the claimant] was capable of performing sedentary work, even though there was no medical testimony supporting this conclusion." 67 F.3d 552, 557 (5th Cir. 1995). The court held that although an ALJ usually should request a medical source statement describing the types of work that the applicant was still capable of performing, the absence of such a statement did not necessarily make the record incomplete. *Id.* Instead, the court held that the inquiry should focus upon "whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* The record in *Ripley* included a vast amount of medical information establishing that the claimant had a back problem. However, because it failed to clearly establish the effect of that condition on the claimant's ability to work, the court found that the ALJ's RFC determination was not supported by substantial evidence. *Id.* The court remanded the case and instructed the ALJ to obtain a report from a treating physician. *Id.*

Here, the ALJ did not identify the medical opinions underlying his determination of the extent and severity of Carrillo's manipulative limitations. The records do include evidence that provide a medical basis to support that Carrillo has manipulative limitations. Carrillo has suffered cerebrovascular accidents and has been diagnosed with diabetic neuropathy. Tr. 1000, 1145. Further, examinations have noted weakness of the extremities and loss of sensation. Tr. 344, 355, 372, 384. Carrillo was also observed to have a weak handgrip and paresthesia. Tr. 978, 981, 1159, 1160, 1163, 1185, 1186. However, there are no medical opinions in the record that the ALJ relied upon to determine that Carrillo can perform manipulative activities frequently rather than only occasionally. Thus, the ALJ appears to have relied on his own interpretation of the medical and other evidence, which he may not do. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("An ALJ may not—without the opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions, [and] an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions."); *see also Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (ALJ impermissibly relied on his own medical opinion to develop his RFC determination). Consequently, substantial evidence does not support the ALJ's determination of the extent and severity of Carrillo's manipulative limitations. *Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence.").

Further, the ALJ's reliance on his own determination of Carrillo's manipulative limitations prejudiced Carrillo. To establish prejudice, Carrillo must show that the ALJ's error casts doubt on the existence of substantial evidence supporting his disability determination. *See McNair v.*

*Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)); *Thornhill v. Colvin*, No. 14-CV-335-M, 2015 WL 232844, at *11 (N.D. Tex. Dec. 15, 2014) (prejudice existed "where the ALJ could have obtained evidence that might have changed the result—specifically, a medical source statement"). The ALJ's error here casts doubt on his determination of Carrillo's disability. Accordingly, the error is not harmless, and remand is required on this issue.

**C.      The ALJ properly considered Carrillo's functional limitations.**

Carrillo argues that the ALJ erred by failing to consider whether he would require a cane or a walker to perform the incidental standing and walking connected with sedentary work. ECF No. 13 at 11. He points to medical records indicating his antalgic gait and contends he was observed using assistive devices for ambulation. *Id.* Social Security Ruling ("SSR") 96-9p provides that an ALJ must consider the impact of medically required hand-held devices, such as a cane or walker, when evaluating the claimant's RFC. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7.

While the medical records periodically mention Carrillo's use of a cane, none of them state that it was medically necessary. Instead, they simply note Carrillo's own account of his use of a cane or observations that he had brought his cane with him to the evaluations. Tr. 537, 1137, 1165, 1199, 1200, 1234, 1295, 1464. On April 11, 2017, Mytrang Thi Tran, M.D. issued to Carrillo a "[c]ane for ambulation assistance," and on January 10, 2018, Dr. Tran noted that a "[w]alker with

seat and shower chair Rxs [was] given." Tr. 1107, 1266. However, Dr. Tran did not outline in his reports any specific medical restriction requiring Carrillo to use the assistive devices. Nor did he describe the circumstances under which Carrillo needed to use them.

The records also demonstrate Carrillo's ability to ambulate independently, normal gait, normal strength in his lower extremities, no motor or sensory deficits, and normal muscle tone. Tr. 105, 957, 959, 1025, 1054, 1073, 1093, 1098, 1283, 1293, 1305, 1315, 1326, 1370, 1404, 1433. Additionally, the ALJ pointed to the January 9, 2018 report by Ponnaiah C. Mohan, M.D., who noted that Carrillo's lower extremity edema was gone and that he "was doing well and using a cane to walk." Tr. 24. Accordingly, to the extent that Carrillo argues that the ALJ should have included the use of a cane or a walker in his RFC, he fails to meet his burden to show that he required such assistive devices to ambulate, and substantial evidence in the record supports the ALJ's omission of them in the RFC. *Johnson v. Berryhill*, No. 3:15-CV-3961-BH, 2017 WL 1105720, at *11 (N.D. Tex. Mar. 24, 2017) (ALJ did not err in omitting the use of a cane in the RFC because "none of the records state that it was medically necessary, and they simply note that she brought her own cane with her to the valuations"); *Stewart v. Colvin*, No. 1:12-CV-039-BL, 2013 WL 1979738 at *5 (N.D. Tex. May 14, 2013) (same).

Carrillo also contends that the ALJ erred in not evaluating whether his impairments of diabetic retinopathy, macular edema, bilateral cataracts, and a retinal hole would affect his vision, and how that would impact his ability to perform work-related activities. ECF No. 13 at 11-12. Additionally, he argues that the ALJ did not consider the impact of his limited literacy in determining his RFC. *Id.* at 12. As the Commissioner argues, however, Carrillo fails to point to any medical evidence in the record to support his allegations. Further, Carrillo did not offer

testimony at the hearing that he had any vision issues, and his attorney did not question him about them. Tr. 312-325.

Carrillo argues that the ALJ also erred by not questioning the VE about the effect of an assistive device for ambulation upon his ability to perform incidental standing and walking connected with sedentary work and the impact of his limited literacy upon the jobs the ALJ relied on at step five. ECF No. 13 at 12-13. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported by the record. *See Morris*, 864 F.2d at 336.

Based on the previous discussion regarding assistive devices, the ALJ did not have to question the VE as to the effect of an assistive device for ambulation, and Carrillo has not offered any evidence in the record to support his argument regarding the impact of limited literacy. Because Carrillo has not met his burden to show that he required an assistive device to ambulate, he fails to establish that the ALJ should have included the use of such device in his RFC assessment. Carrillo also fails to point to any medical evidence in the record to support a finding that he had work-related vision deficits or limited literacy. Therefore, the ALJ properly considered Carrillo's functional limitations in determining his RFC, and remand is not required on this basis.

**D.     The ALJ did not err in his hypothetical questions regarding alternative work.**

Finally, Carrillo argues that the ALJ did not account for the effect of the vascular insult to his brain when posing hypothetical questions to the VE concerning other jobs that were available. ECF No. 13 at 12-13. Carrillo contends that even though the ALJ may have intended to limit him to simple jobs, one to two-step jobs, or jobs that could be learned by rote based upon the vascular insult to the brain, he deleted those limitations from his RFC determination upon learning that this would reduce the range of work to less than a significant number of jobs. *Id.* at 13. Carrillo attacks

the ALJ for deleting these restrictions as "results-driven" and "offensive." *Id.* The Commissioner responds that Carrillo failed to offer any evidence of his mental limitations and did not suggest specific limitations that the ALJ should have included in his questioning. ECF No. 14 at 9.

This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-cv-00194-BG, 2012 WL 569188, at *4–5 (N.D. Tex. Jan. 19, 2012), *report and rec. adopted,* No. 5:10-cv-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (internal citation omitted). Neither of the above requirements is present here.

First, the hypothetical question reasonably incorporated all of Carrillo's disabilities and impairments recognized by the ALJ. In the ALJ's written opinion, he recognized Carrillo's severe impairments of obesity, vascular insult to the brain, stage 4 kidney disease, diabetic neuropathy, diabetic retinopathy, and congestive heart failure. Tr. 14. He found that Carrillo

> [had] the [RFC] to lift and carry 10 pounds occasionally and less than 10 pounds frequently, as well as stand and walk 2 hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday. His ability to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) is reduced by inability to use the upper extremities on more than a frequent basis for fingering, feeling and grasping.

*Id.* at 22. The ALJ incorporated all these impairments when he asked the VE the following hypothetical question:

Let me ask you, first, to assume that a person of his age, education, and work experience could lift up to 10 pounds, stand and walk two out of eight, and sit six out of eight. Let's assume that he could use his upper extremities on a frequent basis. Would he be able to perform any type of work?

*Id.* at 327. As Carrillo notes, the ALJ modified this hypothetical question to incorporate additional limitations. In response to those modified hypothetical questions, the VE testified that there were no jobs that exist in significant numbers in the national economy that Carrillo could perform for some of the modified questions and there were for others. *See id.* at 327-34. Carrillo argues that this evidences a result-oriented effort by the ALJ that is offensive. However, the hypothetical questions that the ALJ asked were based upon the RFC that he formulated, and they sufficiently incorporated the disabilities and impairments that he recognized. Because there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," there is no reversible error on this point. *Ellis v. Astrue*, No. 7:09-cv-00070-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Second, Carrillo was afforded the opportunity to correct deficiencies in the ALJ's hypothetical questioning. His attorney asked questions of the VE and could have inquired further about specific limitations relating to Carrillo's brain condition that he believed the ALJ had omitted. *See* Tr. 335-37. He did not do so. Accordingly, he cannot now be heard to object to the propriety of the hypothetical question. *Bordelon v. Astrue*, 281 F. App'x 418, 423, n.7 (5th Cir. 2008) (internal quotation mark omitted). For this additional reason, reversal is not required on Carrillo's challenge to the ALJ's hypothetical question.

## IV.    CONCLUSION

The ALJ did not evaluate evidence that Carrillo's impairments satisfied the requirements set forth in the Listing, and the AC's subsequent denial of Carrillo's appeal constitutes reversible error. Additionally, the ALJ improperly relied on his own interpretation of the medical and other

14

evidence to determine Carrillo's RFC. However, the ALJ properly considered Carrillo's functional limitations, and the ALJ did not err in his hypothetical questions regarding alternative work. Because the ALJ did not employ the correct legal standards, substantial evidence in the record did not support his decision, and the AC committed reversible error, the undersigned **RECOMMENDS** that Judge O'Connor **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on June 4, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE